IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION,** *As Receiver for Sunrise Bank,*<br><br>    **Plaintiff,**<br><br>v.<br><br>**SRI CHAKRA GROUP LLC,** *et al.,*<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **CIVIL ACTION NO. 5:13-CV-268 (MTT)**<br>)<br>)<br>)<br>)<br>) |

## <u>ORDER</u>

This matter is before the Court on Plaintiff Federal Deposit Insurance Corporation's ("FDIC") motion for summary judgment. (Doc. 4).[1] For the following reasons, the motion for summary judgment is **GRANTED**.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Sunrise Bank initially brought this action in the Superior Court of Monroe County, Georgia. (Doc. 1-1). The FDIC became the receiver of Sunrise Bank on or about May 10, 2013 and was substituted as the Plaintiff on June 14, 2013. (Doc. 8). Pursuant to 12 U.S.C. § 1819(b)(2)(B),[2] the Plaintiff removed the case to this Court on August 1, 2013. (Doc. 1). The Plaintiff seeks to collect outstanding principal and interest due

---

[1] Though the motion was briefed prior to removal referencing the standards of the Georgia Civil Procedure Act instead of the Federal Rules of Civil Procedure, the Parties have agreed the motion is ripe and discovery is not necessary. This Court, of course, applies the Federal Rules.

[2] Section 1819(b)(2)(B), pertaining to cases involving the FDIC, states, "Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party."

pursuant to a promissory note and guaranty agreements, as well as attorneys' fees pursuant to O.C.G.A. § 13-1-11.

On May 29, 2008, Defendant Sri Chakra Group, LLC ("Sri Chakra") executed a promissory note in the amount of $339,750.00 in favor of Bank of Valdosta. (Doc. 4 at 14).[3] The note states that Sri Chakra "will pay this loan in 34 regular payments of $2,535.00 each and one irregular last payment estimated at $314,211.07." (Doc. 4 at 14). Sri Chakra also granted to Bank of Valdosta an interest in certain real property, along with a power of sale, in a security deed dated January 4, 2007.[4] (Doc. 4 at 16, 19). Bank of Valdosta subsequently merged with Sunrise Bank of Atlanta and the resulting entity was Sunrise Bank. (Docs. 7 at ¶¶ 2-7; 10).

The note is personally guaranteed by Defendants Vidyavati Arun Patel, Vijayka L. Kalli, Ramana V. Kalli, and Venkat P. Sanjeev ("Guarantors") by virtue of written guaranty agreements dated January 4, 2007. (Doc. 4 at 11-12, 24-34). Each guaranty lists Sri Chakra as "Borrower," Bank of Valdosta as "Lender," and Patel, V. Kalli, R.

---

[3] The Defendants issued blanket denials in their response to the Plaintiff's statement of material facts on the basis that the Plaintiff has failed to present admissible evidence of any of its factual assertions. The Defendants contend most of the documentary evidence submitted in support of the motion is inadmissible on authenticity and hearsay grounds. For the reasons discussed below, the Court finds these challenges without merit. *See infra* Part II.B. In their answer, the Defendants admit "true and correct original" copies of the documents speak for themselves. (Doc. 3 at ¶¶ 7, 8, 10, 11). The Defendants have not presented evidence or pointed to anything in the record showing the facts are disputed, and the Court has examined the record and determined there is sufficient evidence to support the Plaintiff's statement of material facts. Therefore, the Court deems these facts undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e).

[4] The note provides a maturity date of May 3, 2011. (Doc. 4 at 14). In their motion for summary judgment, the Plaintiff asserts the maturity date was extended to October 29, 2014. However, the Court cannot conclude from the record whether the maturity date for the note at issue was extended. There is a modification of the security deed attached to the complaint that lists this new maturity date, but there is nothing on the record showing the new date specifically relates to the note at issue in this case. (Doc. 1-1 at 8). The security deed was executed prior to the note at issue, and by its terms secures payment of another promissory note with a maturity date of January 4, 2008 as well as future advances. (Doc. 4 at 16). Nonetheless, the debt unquestionably matured when Sri Chakra went into default and the debt was properly accelerated, so it is immaterial for purposes of this motion whether the maturity date was previously extended.

Kalli, or Sanjeev as "Guarantor."  (Doc. 4 at 24-34).  Each guaranty provides:

"Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents."  (Doc. 4 at 24, 27, 29, 32).  Each guaranty also states it is a "continuing guaranty," meaning each "Guarantor agrees to guarantee the full and punctual payment, performance, and satisfaction of the Indebtedness of Borrower to Lender, now existing or hereafter arising or acquired on an open and continuing basis."  (Doc. 4 at 24, 27, 29, 32).

On or about September 18, 2012, Sunrise Bank sent the Defendants written notice that the entire balance due was accelerated and demanded payment of the indebtedness.[5]  (Doc. 1-1 at 10).  This notice also informed the Defendants that, pursuant to O.C.G.A. § 13-1-11, the Defendants would be liable for attorneys' fees if the indebtedness was not paid within ten days.  (Docs. 1-1 at 10; 4 at 12 ¶ 6).  The complaint further informed the Defendants that if the entire balance due on the note was not paid within ten days of service of the complaint, the Plaintiff would seek attorneys' fees.  (Doc. 1-1 at 4 ¶ 12). Receiving no payment, the Plaintiff moved for summary judgment.  The Defendants oppose the motion, contending 1) Lisa Harrington's affidavit, submitted with the Plaintiff's motion, is insufficient to establish the authenticity of the documents it seeks to admit; 2) Georgia's judicial foreclosure process denies borrowers

---

[5] The demand letter is attached to the Plaintiff's complaint.  In their answer, the Defendants admit the document appears to be a photocopy of a demand but assert they "would demand strict proof that the document is what it purports to be, and that the original true and correct copy be produced … [and] that the true and correct copy speaks for itself … ."  (Doc. 3 at ¶ 10).  Lisa Harrington's affidavit states that the demand letter attached to the complaint is a true and correct copy.  (Doc. 4 at 12).  As the Defendants have not further objected to this particular document in their response to the Plaintiff's motion for summary judgment, the Court has considered the document in ruling on the motion.

and guarantors due process of law and equal protection of the laws; and 3) the Plaintiff is not entitled to the attorneys' fees claimed.

## II.  DISCUSSION

### A.  Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment."  *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing *Four Parcels of Real Prop.*, 941 F.2d at 1438).  The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party."  *Four Parcels of Real Prop.*, 941 F.2d at 1438.  In

other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict. *Id.*

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. ... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the Court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'" *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 940, 952 (11th Cir. 1986)).

### B. Defendants' Objection to Documents Attached to Harrington Affidavit

The Court must first determine whether it can rely on the documents attached to the affidavit of Lisa S. Harrington, chief credit officer of Sunrise Bank, which the Plaintiff submitted in support of its motion for summary judgment. The Defendants contend the documents attached to Harrington's affidavit, which include the promissory note, guaranties, and payment records, are inadmissible because the Plaintiff has failed to establish their authenticity or an exception to the rule against hearsay. Pursuant to Fed. R. Civ. P. 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Further,

affidavits used to support a motion for summary judgment must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant … is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Defendants' objections center on Bank of Valdosta's merger with Sunrise Bank of Atlanta. Because Harrington is an employee of Sunrise Bank, the Defendants contend she is not competent to testify about the manner in which Bank of Valdosta kept its business records so as to authenticate the documents attached to her affidavit or bring them within the purview of the business records exception to the rule against hearsay. The Defendants seem primarily concerned with the record evidence of Bank of Valdosta's merger with Sunrise Bank of Atlanta, and contend the testimony in Harrington's affidavit about the merger is insufficient.

The Court finds there is sufficient evidence of the merger on the record. In addition to Harrington's affidavit, the Plaintiff has submitted the affidavit of Richard Cathey, CEO of Sunrise Bank, and the merger documents at issue. (Docs. 7, 10). The articles of merger show Sunrise Bank of Atlanta and Bank of Valdosta applied for a certificate of merger, and a certificate of merger was issued by Secretary of State Brian P. Kemp on July 30, 2010. (Doc. 10 at 1-3). Both the articles and the certificate list the surviving entity as Bank of Valdosta, changing its name to Sunrise Bank. (Doc. 10 at 1-3). The Defendants have not objected to these documents.

Regarding the Defendants' specific objections, the Court finds the documents attached to Harrington's affidavit are business records certified by a custodian pursuant

to Fed. R. Evid. 803(6), making them self-authenticating.[6]  Records are admissible under this exception if a custodian testifies or certifies that they are made at or near the time of the event by someone with knowledge, kept in the course of the business's regularly conducted activity, and that making the record was a regular practice, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.  Fed. R. Evid. 803(6).  As several courts have noted, employees of successor entities can authenticate business records of their predecessor entities that pass to them by virtue of merger.  *See CertusBank, N.A. v. MLJJ Props.*, 2013 WL 4009658, at *3 (M.D. Ga.); *Phillips v. Mortg. Elec. Registration Sys., Inc.*, 2013 WL 1498956, at *3 (N.D. Ala.); *see also  United States v. Hawkins*, 905 F.2d 1489, 1494 (11th Cir. 1990) ("It is not necessary that the person who actually prepared the business record testify, nor that the document be prepared by the business which has custody of it, so long as other circumstantial evidence suggests the trustworthiness of the record.").

In her affidavit, Harrington states she "maintain[s] custody, control, and supervision of all of the books of accounts and records" relating to this debt and is personally familiar with "the manner, method and procedures used in which the records of the transactions were maintained as to the subject loan account and the demand made."  (Doc. 4 at 11 ¶ 2).  According to Harrington, "[a]ll of the books, documents and records kept under [her] supervisory capacity have been made in the regular course of business of the Plaintiff herein and it is the regular course of such business to make such records and entries and these records are made at or near the time of the

---

[6] "The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person" are self-authenticating.  Fed. R. Evid. 902(11).

transactions they represent."  (Doc. 4 at 12 ¶ 4).  Further, Harrington states, "The business records relating to the Note remained the same and were kept in the same manner, method and procedures by Bank of Valdosta before merger and by Sunrise Bank thereafter."  (Doc, 4 at 12 ¶ 4).  She also states true and correct copies of the note and guaranties are attached to her affidavit.  The Court finds Harrington's affidavit shows these documents are admissible.

### C.  Liability on Promissory Note and Guaranties

"Where … the record shows that the promissory note and guarantees were duly executed by the debtors and that they are in default, a prima facie right to judgment as a matter of law [is] established, and the burden shift[s] to [the defendants] to produce or point to evidence in the record which establishe[s] an affirmative defense."  *Secured Realty Inv. v. Bank of N. Ga.*, 314 Ga. App. 628, 629, 725 S.E.2d 336, 338 (2012); *see also Collins v. Regions Bank*, 282 Ga. App. 725, 726, 639 S.E.2d 626, 627 (2006).  In the present case, the Plaintiff has produced and authenticated copies of the promissory note and guaranty agreements at issue.  (Doc. 4 at 14-15, 24-34).  The Defendants do not deny executing these documents beyond their general evidentiary objections.

The Plaintiff has also shown the Defendants were in default on the loan.  One of the circumstances that constitutes an "Event of Default" under the note is Sri Chakra's failure to make a payment when due.  (Doc. 4 at 14).  The note provides that "[u]pon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount."  (Doc. 4 at 14).  According to Harrington's affidavit and the demand letter attached to the complaint, a demand for payment was sent to the Defendants, and the debt was

accelerated and "declared due and payable in full." (Docs. 4 at 12 ¶ 6; 1-1 at 10). Further, Harrington's affidavit and the payment documents attached establish the outstanding principal and interest due on the loan as of January 22, 2013. (Doc. 4 at 12 ¶ 7, 35).[7]

In their answer, the Defendants assert that the Plaintiff failed to mitigate its damages, specifically by electing to sue on the note first instead of non-judicially foreclosing on the collateral property pursuant to the security deed to lessen its damages. (Doc. 3 at 1-2).[8] The Defendants recognize that Georgia courts have rejected this defense. *See, e.g.*, *Big Sandy P'ship, LLC v. Branch Banking & Trust Co.*, 313 Ga. App. 871, 872-73, 723 S.E.2d 82, 84 (2012); *REL Dev., Inc. v. Branch Banking & Trust Co.*, 305 Ga. App. 429, 431, 699 S.E.2d 779, 780-81 (2010). Nevertheless, they contend "constitutional issues are raised by these facts." (Doc. 6 at 4). The Defendants are concerned that if the Court enters judgment for the Plaintiff, a sheriff will conduct a sale of their assets. The Defendants argue that because the Plaintiff will be able to bid on their assets without a hearing on their value and retain the balance of the judgment against them, their rights to due process and equal protection of the laws under the Georgia constitution would be violated. While the Court understands the Defendants' contention, the constitutionality of Georgia's judicial foreclosure process is

---

[7] Although the Defendants deny being in default in their answer, they do not raise this in response to the Plaintiff's motion for summary judgment.

[8] The Defendants' remaining affirmative defenses have not been argued in response to the Plaintiff's motion, so the Court deems them abandoned and declines to address them. *See United States v. Kafleur*, 168 F. App'x 322, 327 (11th Cir. 2006) (citing *Rd. Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Co.*, 10 F.3d 1563, 1568 (11th Cir. 1994)) (upholding district court's decision not to address affirmative defenses pled but not raised in defendant's motion for summary judgment or in opposition to government's motion for summary judgment); *Secured Realty Inv.*, 314 Ga. App. at 629, 725 S.E.2d at 338 (finding defendants were required to come forward with or point to specific facts in the record to establish affirmative defenses).

not properly before the Court for consideration.  The actions the Defendants are challenging have not yet taken place.  As such, any decision on this issue would be an advisory opinion outside the scope of the Court's authority.

### D. Damages

According to Harrington's affidavit and payment records attached to it, as of January 22, 2013, the balance due on the note was $310,395.23, with accrued interest of $20,433.48, for a total of $330, 828.71.  (Doc. 4 at 12 ¶ 7, 35).  The per diem interest rate, which continues to accrue, is $53.88.  (Doc. 4 at 12 ¶ 5, 35).  As discussed above, other than their evidentiary objections the Defendants have not disputed the amounts nor presented any evidence to the contrary.  Determining the damages as of the date of this Order is a simple mathematical calculation.  Three hundred seventy-seven days have elapsed from January 22, 2013 to the date of this Order.  Therefore, the accrued interest due as of this date is $40,746.24.[9]  The total outstanding debt is $351,141.47.[10]

### E. Attorneys' Fees and Expenses

The Plaintiff claims it is entitled to attorneys' fees in the amount of 15% of the principal plus accrued interest. O.C.G.A. § 13-1-11(a) deems "[o]bligations to pay attorney's fees upon any note or other evidence of indebtedness" enforceable as long as:

> (1) the note's terms include an obligation to pay attorney fees; (2) the debt owed under the note has matured; (3) notice was given to the debtor informing him that if he pays the debt within ten days of the notice's receipt, he may avoid attorney fees; (4) the ten day period has expired without payment of the principal and interest in full; and (5) the debt is collected by or through an attorney."

---

[9] $53.88 per diem interest rate x 377 days = $20,312.76 + $20,433.48.

[10] $310,395.23 principal + $40,746.24 accrued interest.

-10-

*TermNet Merch. Servs., Inc. v. Phillips*, 277 Ga. 342, 344, 588 S.E.2d 745, 747 (2003) (citing O.C.G.A. § 13-1-11(a)(1)-(3)).  The note may specify a percentage of the principal and interest due for the amount of attorneys' fees as long as it does not exceed 15%.  O.C.G.A. § 13-1-11(a)(1).  If the note provides for "reasonable attorney's fees" but does not specify a percentage, "such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00."  O.C.G.A. § 13-1-11(a)(2).

The record shows all five prerequisites have been met.  By its terms the note obligates Sri Chakra to pay attorneys' fees in the amount of 15% of the principal plus accrued interest if the sums due are collected by or through an attorney.[11]  (Doc. 4 at 14).  The debt matured when Sunrise Bank exercised its right to accelerate payment of the full amount due on the loan.  Both the demand letter sent to the Defendants and the complaint contained the requisite statutory notice.  (Doc. 1-1 at 10).  The payment records show the Defendants did not pay within the ten-day period.  Finally, the debt is being collected through an attorney.

The Defendants oppose the amount of attorneys' fees for two reasons: 1) the guaranty agreements do not contain a provision for 15% attorneys' fees like the note does and thus the Guarantors would only be liable for attorneys' fees calculated under O.C.G.A. § 13-1-11(a)(2); and 2) O.C.G.A. § 13-1-11's allowance of 15% attorneys' fees by virtue of these contractual provisions is unconscionable.

---

[11] The note provides: "Lender may hire or pay someone else to help collect this Note if Borrower does not pay.  Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's costs of collection, including court costs and fifteen percent (15%) of the principal plus accrued interest as attorneys' fees, if any sums owing under this Note are collected by or through an attorney at law … ."  (Doc. 4 at 14).

As to the Defendants' first argument, the Court concludes the guaranties and promissory note unambiguously show both Sri Chakra and the Guarantors are liable for the 15% attorneys' fees. If there is no ambiguity, the interpretation of contracts is a matter of law for the court to decide. *Gen Elec. Capital Corp. v. Nucor Drilling, Inc.*, 551 F. Supp. 2d 1375, 1379 (M.D. Ga. 2008) (citing *Parker v. Ga. Receivables, Inc.*, 215 Ga. App. 624, 625, 451 S.E.2d 538 (1994)); *Core LaVista, LLC v. Cumming*, 308 Ga. App. 791, 794, 709 S.E.2d 336, 340 (2011).

The guaranties provide that each guarantor "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender." (Doc. 4 at 24, 27, 29, 32). Each guaranty states that "Indebtedness" includes:

> [A]ll of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, *attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form*, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender."

(Doc. 4 at 24, 27, 29, 32) (emphasis added). Thus, by their unambiguous terms the guaranties contemplate the Guarantors being liable for attorneys' fees Defendant Sri Chakra owes to the lender arising from its debts. Because the promissory note provides that Defendant Sri Chakra is liable for attorneys' fees in the amount of 15% of the outstanding debt, and because this percentage is enforceable pursuant to O.C.G.A. §13-1-11(a)(1), the Guarantors are also liable for this amount by virtue of their agreements to pay Sri Chakra's indebtedness "absolutely and unconditionally."

The Defendants point out that the "Miscellaneous Provisions: Attorneys' Fees; Expenses" provision of each guaranty provides that:

> Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. … Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings … , appeals, and any anticipated post-judgment collection services.

(Docs. 4 at 25, 30, 33). According to the Defendants, this means the Guarantors are only liable for attorneys' fees actually incurred, and thus the Plaintiff employed the wrong calculation for attorneys' fees with regard to the Guarantors. The Defendants contend the statutory provision providing for calculation of attorneys' fees where no percentage is specified should be used. *See* O.C.G.A. § 13-1-11(a)(2). However, this argument completely ignores the provision of the guaranties relating to "Indebtedness" discussed above. The Court finds these two provisions are easily reconciled: the attorneys' fees provision under "Miscellaneous Provisions" obligates the Guarantors to pay attorneys' fees and expenses not otherwise covered by their obligation under "Indebtedness," which obligates them to pay attorneys' fees Sri Chakra owes by virtue of its debt.[12]

The Court further concludes the Defendants' unconscionability argument is without merit. As the Defendants note, both Georgia courts and courts applying Georgia law have consistently enforced contracts with 15% attorneys' fee provisions pursuant to O.C.G.A. § 13-1-11. Nevertheless, the Defendants contend the application

---

[12] In a recent decision from this district, Judge Clay Land reached the same conclusion when construing two similar provisions of a guaranty agreement. *See Renasant Bank, Inc. v. Earth Res. of Franklin Cnty., LLC*, 2013 WL 1993673, at *3 (M.D. Ga.). The first provision required the guarantor to pay "'all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees collection costs and enforcement expenses referable thereto.'" *Id.* The second provision obligated the guarantor to pay "'costs and expenses (including reasonable attorneys' fees and legal expenses) incurred in connection with the protection, defense or enforcement of this guaranty … .'" *Id.*

of O.C.G.A. § 13-1-11 through the contractual provisions is unconscionable and suggest the statute may also be unconstitutional.[13]

Pursuant to Georgia law, "[a]n unconscionable contract is one abhorrent to good morals and conscience. It is one where one of the parties takes a fraudulent advantage of another." *William J. Cooney, P.C. v. Rowland*, 240 Ga. App. 703, 704, 524 S.E.2d 730, 732 (1999) (internal quotation marks and citation omitted). "An unconscionable contract is such an agreement as no sane man not acting under a delusion would make, and that no honest man would take advantage of." *R.L. Kimsey Cotton Co., Inc. v. Ferguson*, 233 Ga. 962, 966, 214 S.E.2d 360, 363 (1975) (internal quotation marks and citation omitted). "The basic test [of 'unconscionability' within the meaning of O.C.G.A. § 11–2–302] is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Zepp v. Mayor & Council of Athens*, 180 Ga. App. 72, 78, 348 S.E.2d 673, 678 (1986) (alteration by Georgia Court of Appeals) (internal quotation marks and citation omitted). Georgia law recognizes both procedural and substantive unconscionability. *See NEC Techs., Inc. v. Nelson*, 267 Ga. 390, 392, 478 S.E.2d 769, 772 (1996). "Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves." *Id.* at 392, 478 S.E.2d at 771. The Defendants have not made an argument regarding procedural unconscionability. For substantive unconscionability, courts typically consider "the commercial reasonableness of the contract terms, the purpose and effect

---

[13] Because the Defendants have not presented any argument as to why the statute is unconstitutional, the Court limits discussion to the Defendants' unconscionability argument.

-14-

of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Id.* at 392, 478 S.E.2d at 772.

The Defendants contend that because the Plaintiff is first seeking to obtain a judgment without providing any credit for the collateral, the "Plaintiff will reap an unreasonable windfall at the sole expense of and detriment to the Defendant." (Doc. 6 at 9). This is because the Plaintiff will be able to get the additional value of the collateral, and the amount of attorneys' fees awarded will be based on the entire amount of the outstanding debt without any reduction taken for the collateral.[14] While the contractual provision may result in a disproportionately large award of attorneys' fees, it cannot be substantively unconscionable because it is authorized by statute.[15] *See William J. Cooney*, 240 Ga. App. at 704, 524 S.E.2d at 733 ("That which the law itself specifically permits cannot be unconscionable.") (citing *Zepp*, 180 Ga. App. at 78, 348 S.E.2d at 678); *see also TermNet Merch. Servs., Inc.*, 277 Ga. at 344-45, 588 S.E.2d at 747 (holding that award of attorneys' fees under O.C.G.A. § 13-1-11 is mandatory if statutory prerequisites are met). O.C.G.A. § 13-1-11 expressly authorizes 15% of the outstanding debt as attorneys' fees, and the statutory requirements have all been met. Therefore, the contractual provisions are not unconscionable. The

---

[14] The Defendants rely in part on *David v. ITT Diversified Credit Corp.*, 174 Ga. App. 910, 332 S.E.2d 8 (1985), where the Georgia Court of Appeals remanded the trial court's award of attorneys' fees pursuant to O.C.G.A. § 13-1-11 because the computation was based on the amount outstanding at the time of default and did not include credit for the value of the collateral. However, in that case the collateral was actually sold and thus the outstanding debt reduced. Further, the court found the proceeds from the sale were not collected "by and through an attorney" because the sale was based on a repurchase agreement between the creditor and the manufacturer of the mobile homes that served as collateral. *Id.* at 911, 332 S.E.2d at 10.

[15] The Defendants cite a case where the Eleventh Circuit noted the unjust outcomes possible under O.C.G.A. § 13-1-11, but observed that the statute itself was not being challenged. *See United States v. Allen*, 699 F.2d 1117, 1123 (11th Cir. 1983). Similarly, the Defendants in this case have not challenged the validity of the statute because they have made no argument as to its constitutionality.

Defendants are liable for attorneys' fees in the amount of 15% of the outstanding debt, which is $52,671.22.

The Plaintiff also seeks "costs of this action" in the amount of $456.00. The Defendants have not contested the amount of these costs, other than their general evidentiary objections.[16] The Court is interpreting this as a request to recover taxable costs as expenses of litigation. Because the Court is awarding the Plaintiff these costs, there will be no taxation of costs after this Order is entered.

### III. CONCLUSION

The Plaintiff's motion for summary judgment (Doc. 4) is **GRANTED**. The Plaintiff is entitled to recover $404,268.69, which includes $351,141.47 in unpaid principal and accrued interest on the loan, plus $52,671.22 in attorneys' fees, plus $456.00 in taxable costs.

**SO ORDERED,** this 3rd day of February, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[16] In Harrington's affidavit, where she breaks down the amount the Defendants owe, she lists the $456.00 "costs of this action." (Doc. 4 at 12 ¶ 7).